ORIGINAL
FILED

2011 FEB -1 P 2: 58

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

1  LEXINGTON LAW GROUP
   Mark N. Todzo (State Bar No. 168389)
2  Howard Hirsch (State Bar No. 213209)
   1627 Irving Street
3  San Francisco, CA  94122
   Telephone:  (415) 759-4111
4  Facsimile:  (415) 759-4112
   motodzo@lexlawgroup.com
5
   Christopher M. Burke (State Bar No. 214799)
6  SCOTT + SCOTT LLP
   600 B Street, Suite 1500
7  San Diego, CA 92101
   Telephone: (619) 233-4565
8  Facsimile: (619) 233-0508
   cburke@scott-scott.com
9
   Attorneys for Plaintiff
10 C.F.C., a minor, by and through
   Christine F., his parent and guardian
11

12                UNITED STATES DISTRICT COURT

13              NORTHERN DISTRICT OF CALIFORNIA

14                  SAN FRANCISCO DIVISION

15

CV11        0487        EMC

| | |
|---|---|
| 16  C.F.C., minor, by and through CHRISTINE F., his parent and guardian, on behalf of himself and all others similarly situated,<br><br>18                    Plaintiff,<br><br>19        vs.<br><br>20  POWER BALANCE, LLC, a Delaware Limited Liability Company.<br><br>22                    Defendants. | Case No.<br><br>CLASS ACTION<br><br>**COMPLAINT** |

17
18
19
20
21
22
23
24
25
26
27
28

Plaintiff C.F.C., a minor, by and through Christine F., his parent and guardian ("Plaintiff"), on behalf of himself and those similarly situated, based on information and belief and investigation of his counsel, except for information based on personal knowledge, hereby alleges:

## INTRODUCTION

1.     This Complaint seeks to remedy the unfair, deceptive, and unlawful business practices of defendant Power Balance, LLC ("Defendant") with respect to the marketing and sales of its wristbands, pendants and other jewelry with "Mylar Holograms" and the holograms themselves (the "Products"). The Products are marketed and advertised as improving balance, strength, flexibility, endurance, and stamina. These claims, however, are not true, and Defendant has no basis for these representations. In fact, Defendant recently admitted that "there is no credible scientific evidence" to support these claims, and that Defendant "engaged in misleading conduct" in marketing the Products. Plaintiff and the Class would not have purchased the Products but for Defendant's false promotion of the illusory benefits.

2.     As independent scientific studies have proven, the Products are no more effective at improving an athlete's performance than ordinary rubber jewelry. Nevertheless, Defendant charges significantly higher prices for the Products than ordinary rubber jewelry. Defendant has thus fraudulently induced Plaintiff and the Class to pay more for the Products based on purported qualities which do not exist. Given the absence of any additional benefit of the Products beyond ordinary rubber jewelry, reasonable consumers, including Plaintiff and the Class, would not have purchased the Products, or would not have paid such a high price for the Products, but for Defendant's false promotion of the Products' illusory benefits.

3.     Defendant's false advertising campaign has been extraordinarily successful. Sales of the Products have skyrocketed from $8,000 in 2007 (the first year the Products were sold) to an estimated $35 million in 2010.

4.     Defendant's conduct of falsely promoting non-existent benefits of the Products constitutes unfair, unlawful, and fraudulent conduct, is likely to deceive members of the public, is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers, and violates California's legislatively declared policy against misrepresenting the characteristics of goods and

1  services.  As such, Defendant's advertising practices violate California's Unfair Competition Law,

2  Cal. Bus. & Prof. Code § 17200, *et seq.* (hereinafter the "UCL"), California's False Advertising

3  Law, Cal. Bus. & Prof. Code § 17500, *et seq.* (hereinafter the "FAL"), and California's

4  Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* (hereinafter the "CLRA").

5  Accordingly, pursuant to California Business & Professions Code § 17203, Plaintiff seeks an order

6  enjoining Defendant's acts of unfair competition and awarding restitution to the individual victims

7  of Defendant's unfair and deceptive practices.  In addition, Plaintiff and the Class of similarly

8  situated California individuals on whose behalf Plaintiff brings this action seek an injunction

9  pursuant to the CLRA and intend to seek damages under the CLRA in a future amendment to this

10  Complaint.

11      5.      Defendant's promotional statements that the Products improve users' balance,

12  strength and flexibility are consistently made in the brochure for the Products as well as in all of

13  the advertising and promotional videos for the Products.  These factual statements are thus part of

14  the basis of the bargain between Defendant on the one hand and Plaintiff and the Class on the

15  other.  Because the statements are not true, Defendant has breached the express warranties it has

16  made with respect to the Products.

17                              **PARTIES**

18      6.      Plaintiff C.F.C. ("Plaintiff"), a minor, by and through Christine F., his parent and

19  guardian, is a resident of California and purchased one of the Products.  Plaintiff purchased a

20  Power Balance bracelet at a Sports Authority retail store in Foster City, California, on or about

21  December 2010.  Prior to purchasing the Product, Plaintiff had seen a live demonstration of a

22  Product that was substantially similar to the video demonstrations on Defendant's website.

23  During the demonstration, Plaintiff and others were told to stand on one leg with the other leg

24  bent, and both arms raised outward to shoulder height.  The person performing the demonstration

25  applied pressure to the arms and asked that the pressure be resisted.  This was done while there

26  was no bracelet around the wrist and then again with the bracelet around the wrist.  The person

27  performing the demonstration stated that the bracelet is intended to make the arm stronger and this

28  is evidenced when pressure is applied. Some of the individuals undergoing the demonstration said

1 | they felt stronger with the bracelet on.  Based on this, Plaintiff decided to look into purchasing the

2 | bracelet.  At the time of purchase, Plaintiff read the claims on the box which confirmed what he

3 | was told during the demonstration that the bracelet is designed and meant to improve strength and

4 | balance.  Had Plaintiff known that Defendant had no support for the statements made regarding

5 | the benefits of the Products and that the Products do not improve athletic performance whatsoever,

6 | Plaintiff would not have bought the Product at all, let alone paid substantially more for the Product

7 | than the cost of other rubber bracelets.

8 | 7. Defendant Power Balance, LLC is a Delaware limited liability company with its

9 | principal place of business in Laguna Niguel, California.  Defendant distributes and sells the

10 | Products in California and throughout the United States.

11 | **JURISDICTION AND VENUE**

12 | 8. The Court has diversity jurisdiction over this action under 28 U.S.C. § 1332(d)(2).

13 | Plaintiff seeks certification of a nationwide class of all persons who purchased the Products during

14 | the applicable statute of limitations.  Defendant is a citizen of California and/or Delaware.  The

15 | amount in controversy, exclusive of interest and costs, exceeds $5 million.

16 | 9. The Court has personal jurisdiction over Defendant because it is a corporation that

17 | has sufficient minimum contacts in California, or otherwise intentionally avails itself of the

18 | California market through its marketing and sales of the Products in the State of California, and/or

19 | by having such other contacts with California so as to render the exercise of jurisdiction over it by

20 | the California courts consistent with traditional notions of fair play and substantial justice.

21 | 10. Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the

22 | events or omissions giving rise to the claim occurred in this District.

23 | **INTRADISTRICT ASSIGNMENT**

24 | 11. The actions giving rise to Plaintiff's claims occurred in San Mateo County.

25 | Accordingly, commencement and assignment of this action to the San Francisco Division is

26 | proper pursuant to Civil L.R. 3-2(c) and 3-2(d).

27 | **BACKGROUND FACTS**

28 | 12. Defendant markets the Products as high-end athletic "Performance Technology."

1    Since beginning to sell the Products in 2007, Defendant has employed and continues to employ a

2    wide-ranging advertising campaign that includes use of internet, television, radio, magazine, and

3    direct mail advertising.

4         13.    In recognition of the fact that consumers would otherwise be unwilling to spend

5    significant sums of money on cheap rubber or plastic jewelry, Defendant's advertising of the

6    Products center around the alleged athletic performance and other physiological benefits of the

7    Products.  To that end, Defendant pays significant sums of money to celebrity athletes to endorse

8    the Products, including NBA basketball stars like Shaquille O'Neill, Lamar Odom, and Derek

9    Rose, NFL football stars like Drew Brees and Vernon Davis, and Major League Baseball stars like

10   Ricky Romero and Shane Victorino.  In a further effort to boost the Products' image as enhancing

11   athletic performance, Defendant recently entered into a marketing agreement with the owners of

12   the Sacramento Kings pursuant to which the Kings' home arena will be named the "Power

13   Balance Pavilion" as of March 1, 2011.

14        14.    Since beginning to sell the Products in 2007, Defendant has made uniform

15   representations regarding the Products' alleged athletic performance and other physiological

16   benefits on its web site, on the web sites of third party retailers, on the Products' packaging, on

17   brochures distributed with the Products, in print publications, on in-store displays, through paid

18   celebrity testimonials, and in other forms of marketing and advertising.  For example, the

19   Products' packaging includes various uniform and prominent representations regarding the

20   Products' alleged benefits, including but not limited to:

21        a.    "Power Balance Is Performance Technology."

22        b.    "Power Balance Performance Technology for sports and everyday life."

23        c.    "The new hologram technology from the US is used by top athletes

24              worldwide."

25        d.    "Most users report increased performance."

26        15.    Defendant also distributes brochures with the Products that include various uniform

27   and prominent representations regarding the Products' alleged benefits, including but not limited

28   to:

1       a.      "Balance · Strength · Flexibility"

2       b.      "Power Balance Is Performance Technology."

3       c.      "Designed to work with your body's natural energy field."

4       d.      "How long does Power Balance® last?  Our holograms are made to last indefinitely, but product lifespan depends on the amount and type of usage."

6       e.      "Is it only beneficial to athletes?  Power Balance® was originally designed to help professional athletes perform at their best, but its benefits have been documented by people of all walks of life.  No matter whether you're looking for better balance and flexibility or need renewed strength and stamina, Power Balance can help."

11       f.      "Can it get wet?  Yes.  Power Balance® works in water . . . ."

12       g.      "Does the product need to touch my skin?  No, it does not need to touch the skin, although it does need to be within contact of the body's natural energy field.  This varies from person to person, but typically ranges from one to three inches from the skin."

16       h.      "'Power Balance gives me an edge.' Ekolu Kalama [professional surfer]."

17       i.      "'Power Balance is the next level.' Lamar Odom [NBA star]."

18       j.      "'It is amazing how I feel better, stronger and more flexible when I exercise.  I especially feel a difference on the track.' Rubens Barrichello [Formula One racing driver]."

21       k.      "'With Power Balance I have the ability to maintain top level performance.' Pri Lima [beach volleyball player]."

23       l.      "'Power Balance is a remarkable product.  Not only does it help me and my team with our balance and endurance on the ice, it also helps my mom live and feel better in her daily routine.' Teemu Selanne [NHL hockey player]"

26    16.     Other uniform and widely distributed representations that Defendant has made regarding the Products' alleged benefits include:

28       a.      "Power Balance holograms are embedded with frequencies that react

1     positivitely with your body's natural energy field to improve balance,

2     strength and flexibility."

3    b.    "Power Balance holograms are designed to work with your body's natural

4       energy field."

5    c.    "The hologram in Power Balance is designed to respond to the natural

6       energy field of the body.  The Mylar material at the core of the Power

7       Balance has been treated with energy waves at specific frequencies.  The

8       resulting Mylar is believed to resonate and work with your body's natural

9       energy flow to help enable you to perform at the best of your ability."

10    d.    "The benefits of Power Balance's performance technology are being

11       enjoyed by hundreds of elite athletes around the world."

12    e.    "Tens of thousands of Power Balance fans around the world – from pro

13       athletes to regular people – report having experienced excellent balance,

14       strength and flexibility when wearing a Power Balance product."

15    f.    "Why was Power Balance created?  For centuries many people – including

16       practitioners of many Eastern philosophies – have practiced different

17       methods to seek to optimize the body's natural energy flow.  Power Balance

18       was created as an easy and affordable method for the public to enjoy.  The

19       idea and subsequent investigation of ways to seek to optimize the body's

20       energy flow is not a new concept.  It has been pursued in many ways over

21       hundreds of years.  Power Balance has created products designed to respond

22       with your body's natural energy flow in a simple and affordable way."

23    g.    "Will wearing Power Balance Make Me Stronger, More Balanced and Gain

24       Greater Flexibility?  Power Balance will not make you stronger than you

25       are, but is designed to help make you as strong as you should be by

26       interacting with your body's natural energy flow."

27    h.    "Power Balance products boost the body's self defense mechanisms

28       creating the immediate benefits of strength, balance and flexibility gain."

1      i.     "When the hologram comes into contact with your body it gives you that

2             added balance, strength, flexibility."

3      j.     "Our products are based on the idea of optimizing the body's natural energy

4             flow, similar to concepts behind many holistic and Eastern philosophies."

5      k.     "Use of the Power Balance results in lots of endurance and stamina."

6      l.      "Made by athletes for athletes, Power Balance™ is a favorite among elite

7             competitors, weekend warriors and every day fitness enthusiasts."

8      m.   "Power Balance™ atheletes believe in the product, for them performance is

9             critical to their success."

10     n.     "The company was created out of the principal that the founders wanted

11           everyone, no matter what their level of activity, to maximize their potential

12           and live life to the fullest."

13     o.     "How long does it last?  The holograms are designed to last indefinitely."

14     p.     "Created by athletes dedicated to holistic care, Power Balance is a

15           Performance Technology that is a favorite among elite athletes and

16           individuals that strive to perform at the top of their game, no matter what it

17           is.  We're helping people excel with a revolutionary technology that's

18           changing the way people live, work and play."

19     q.     "We started out with a single mission -- bring out the best in people by

20           bringing science and nature together.  What we've been able to accomplish

21           is extraordinary."

22     r.      "Power Balance is committed to bringing our wearable technology to

23           everyone so each individual can maximize their potential and live life to its

24           fullest."

25     s.     "Thanks to a committed team dedicating themselves to keeping Power

26           Balance the leader in performance technology, we've expanded our product

27           line to fit everyone's budget, style and need."

28     t.      "Find your perfect balance.  Power Balance."

1          u.     "What does it do?  The Power Balance bracelet contains a Mylar hologram

2                   designed to react with the body's natural energy flow."

3      17.      Defendant's representations regarding the Products' ability to improve balance,

4 strength, flexibility, endurance, and stamina are false.  Defendant has no factual basis to make

5 these claims.

6      18.      The Australian government has concluded that Defendant's advertising of the

7 Products' benefits is misleading and deceptive, and that Defendant did not and does not have "any

8 credible scientific evidence" nor "any reasonable grounds" to support its representations regarding

9 the Products' alleged benefits.  On or about December 21, 2010, in response to the Australian

10 government's investigation, Defendant issued a corrective advertisement stating:

11                "In our advertising we stated that Power Balance wristbands

12                improved your strength, balance and flexibility.  We admit that there

13                is no credible scientific evidence that supports our claims and

14                therefore we engaged in misleading conduct in breach of s52 of the

15                Trade Practices Act of 1974."

16 Defendant also offered a full refund for the purchase price of the Products to any of its Australian

17 customers.

18      19.      While Defendant was "unreservedly" apologizing to its Australian customers for its

19 misrepresentations and offering them a full refund, Defendant continued to disseminate the same

20 misrepresentations to its American customers and continued to profit from those

21 misrepresentations.  In fact, at the same time Defendant was correcting the misstatements made to

22 its Australian customers, Defendant issued a statement regarding the Australian case on the

23 American version of its web site in which Defendant indicated that it "stands by its products," and

24 that it "has made no claims that our product does not perform . . . Our products are based on the

25 idea of optimizing the body's natural energy flow . . . [O]ur products are used by those with open

26 minds who experience real results."

27      20.      In furtherance of its scheme to market the Products' ability to improve balance,

28 strength, flexibility, endurance, and stamina, Defendant has also disseminated videos of the so-

1 called "Power Balance® Tests" in which actors demonstrate the alleged benefits of the Products

2 by performing various physical activities first without wearing the Products and then repeating

3 those same activities while wearing the Products. In each of these "tests," the actors appear to

4 perform the activities better while wearing the Products.

5      21.     In an effort to determine the Products' effectiveness at performing as advertised,

6 exercise physiologists at the University of Wisconsin-LaCrosse ("UW-L") have tried to replicate

7 Defendant's "Power Balance® Tests." In a double-blind study in which neither the examiners nor

8 the test subjects knew whether the test subjects were wearing the Products or a cheap rubber

9 bracelet, test subjects were asked to perform the same physical activities twice – once while

10 wearing the Products and once while wearing a placebo. UW-L researchers found that the test

11 subjects always performed the physical activities at issue (which were designed to replicate those

12 in Defendant's "Power Balance® Tests") better the second time irrespective of whether the

13 subjects were wearing the Products or a placebo. UW-L researchers attributed this so-called

14 "order effect" to the facts that the test subjects were warmed up the second time and had practiced

15 and were prepared for the specific physical tasks at issue. UW-L researchers concluded that the

16 Products made "absolutely no difference" on the test subjects' performance and that the Products

17 are an "absolute scam."

18                    **CLASS ACTION ALLEGATIONS**

19      22.     Plaintiff brings this suit as a class action pursuant to Federal Rule of Civil

20 Procedure 23, on behalf of himself and the class defined as follows:

21           all persons who purchased the Products during the applicable statute

22           of limitations. Specifically excluded from this Class are Defendant;

23           the officers, directors or employees of Defendant; any entity in

24           which Defendant has a controlling interest; and any affiliate, legal

25           representative, heir or assign of Defendant. Also excluded are any

26           federal, state or local governmental entities, any judicial officer

27           presiding over this action and the members of his/her immediate

28           family and judicial staff, and any juror assigned to this action.

1 | (the "Class").

2 |     23.    The Class is sufficiently numerous, as it includes thousands of persons who have

3 | purchased the Products. Thus, joinder of such persons in a single action or bringing all members

4 | of the Class before the Court is impracticable for purposes of Rule 23(a)(1) of the Federal Rules of

5 | Civil Procedure. The disposition of the Class members' claims in this class action will

6 | substantially benefit both the parties and the Court. The members of the Class are readily

7 | ascertainable from Defendant's records and other appropriate discovery.

8 |     24.    There are questions of law and fact common to the Class for purposes of Federal

9 | Rule of Civil Procedure 23(a)(2). Defendant utilizes advertisements and packaging that include

10 | uniform misrepresentations that misled Plaintiff and the other members of the Class. Thus, there

11 | is a well-defined community of interest in the questions of law and fact involved in this action and

12 | affecting the parties.

13 |     25.    Plaintiff asserts claims that are typical of the claims of the entire Class for purposes

14 | of Federal Rule of Civil Procedure 23(a)(3). Plaintiff and all Class members have been subjected

15 | to the same wrongful conduct because they have purchased the Products that do not perform in the

16 | manner that Defendant represents. Plaintiff and the Class have thus all overpaid for the Products.

17 |     26.    Plaintiff will fairly and adequately represent and protect the interests of the other

18 | Class members for purposes of Federal Rule of Civil Procedure 23(a)(4). Plaintiff has no interests

19 | antagonistic to those of other Class members. Plaintiff is committed to the vigorous prosecution

20 | of this action and has retained counsel experienced in litigation of this nature to represent him.

21 | Plaintiff anticipates no difficulty in the management of this litigation as a class action.

22 |     27.    Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(2)

23 | because Defendant has acted on grounds that apply generally to the Class, so that final injunctive

24 | relief or corresponding declaratory relief is appropriate respecting the Class as a whole.

25 | Defendant utilizes advertising campaigns that include uniform misrepresentations that misled

26 | Plaintiff and the other members of the Class.

27 |

28 |

28.     Class certification is appropriate under Federal Rule of Civil Procedure 23(b)(3) because common questions of law and fact substantially predominate over any questions that may affect only individual members of the Class.  Among these common questions of law and fact are:

a.     whether Defendant advertises and markets the Products by representing that the Products improve balance, strength, flexibility, endurance, and stamina;

b.     whether the Products in fact have benefits beyond those of ordinary cheap rubber jewelry;

c.     whether Defendant's marketing and advertising is likely to deceive the Class;

d.     whether Defendant's conduct is unethical, oppressive, unscrupulous, and/or substantially injurious to consumers;

e.     whether Defendant's conduct results in aggregate loss by the Class in excess of $5 million;

f.     whether Defendant's conduct in advertising and marketing the Products constitutes a violation of the CLRA;

g.     whether Defendant's conduct constitutes fraudulent, unfair, or unlawful conduct as defined by the UCL;

h.     whether Plaintiff and Class members are entitled to injunctive and other equitable relief;

i.     whether Defendant's representations concerning the Products constitute express warranties with regard to the Products pursuant to California Civil Code § 2313; and

j.     whether Defendant breached the express warranties it has made with regard to the Products.

29.     Proceeding as a class action provides substantial benefits to both the parties and the Court because this is the most efficient method for the fair and efficient adjudication of the controversy.  Class members have suffered and will suffer irreparable harm and damages as a result of Defendant's wrongful conduct.  Because of the nature of the individual Class members'

1  claims, few, if any, could or would otherwise afford to seek legal redress against Defendant for the

2  wrongs complained of herein, and a representative class action is therefore appropriate, the

3  superior method of proceeding, and essential to the interests of justice insofar as the resolution of

4  Class members' claims is concerned.  Absent a representative class action, Class members would

5  continue to suffer losses for which they would have no remedy, and Defendant would unjustly

6  retain the proceeds of their ill-gotten gains.  Even if separate actions could be brought by

7  individual members of the Class, the resulting multiplicity of lawsuits would cause undue

8  hardship, burden and expense for the Court and the litigants, as well as create a risk of inconsistent

9  rulings which might be dispositive of the interests of the other Class members who are not parties

10  to the adjudications and/or may substantially impede their ability to protect their interests.

11  **FIRST CAUSE OF ACTION**

12  **(Plaintiff, On Behalf of Himself and the Class,**
   **Alleges Violations of the California Consumers Legal Remedies Act – Injunctive Relief)**

13

14      30.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 28 of

15  this Complaint.

16      31.    The acts and practices of Defendant as described above were intended to deceive

17  plaintiff and the Class members as described herein and have resulted and will result in damages

18  to Plaintiff and the Class members.  These actions violated and continue to violate the CLRA in at

19  least the following respects:

20          a.    In violation of Section 1770(a)(5) of the CLRA, Defendant's acts and

21  practices constitute representations that the Products have characteristics, uses and/or benefits

22  which they do not;

23          b.    In violation of Section 1770(a)(7) of the CLRA, Defendant's acts and

24  practices constitute representations that the Products are of a particular quality which they are not;

25  and

26          c.    In violation of Section 1770(a)(9) of the Act, Defendant's acts and practices

27  constitute the advertisement of the goods in question without the intent to sell them as advertised.

28

1    32.    By reason of the foregoing, Plaintiff and the Class members have suffered

2  damages.

3    33.    By committing the acts alleged above, Defendant violated the CLRA.

4    34.    In compliance with the provisions of California Civil Code § 1782, Plaintiff is

5  providing written notice to Defendant of his intention to amend the Complaint to seek damages

6  under California Civil Code § 1750, *et seq.*, and is requesting that Defendant offer an appropriate

7  consideration or other remedy to all affected consumers. Plaintiff intends to amend the Complaint

8  to seek damages should Defendant fail to remedy its conduct in accordance with Plaintiff's

9  demand.

10    35.    Plaintiff and Class members are entitled to, pursuant to California Civil Code

11  § 1780(1)(2), an order enjoining the above-described wrongful acts and practices of Defendant,

12  providing restitution to Plaintiff and the Class members, and ordering the payment of costs and

13  attorneys' fees and any other relief deemed appropriate and proper by the Court under California

14  Civil Code § 1780.

15    Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

16  **SECOND CAUSE OF ACTION**

17  **(Plaintiff, On Behalf of Himself, the Class, and the General Public,**
**Alleges Violations of California Business & Professions Code § 17200, *et seq.***

18  **Based On Fraudulent Acts And Practices)**

19    36.    Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 34 of

20  this Complaint.

21    37.    Under Business & Professions Code § 17200, any business act or practice that is

22  likely to deceive members of the public constitutes a fraudulent business act or practice.

23    38.    Defendant has engaged and continues to engage in conduct that is likely to deceive

24  members of the public. This conduct includes, but is not limited to, misrepresenting that the

25  Products improve balance, strength, flexibility, endurance, and stamina. Specifically, on or about

26  December 2010, at a Sports Authority retail store in Foster City, California, Plaintiff reviewed the

27  packaging for the Products that stated "Power Balance Is Performance Technology," "Power

28  Balance Performance Technology for sports and everyday life," "The new hologram technology

1   from the US is used by top athletes worldwide," and "Most users report increased performance."

2   Plaintiff also viewed Defendant's other advertising materials indicating that the Products would

3   improve balance, strength, flexibility, endurance, and stamina.  Plaintiff understood these

4   statements to mean that the Products would increase his athletic performance.

5          39.     After reviewing the packaging for the Products and Defendant's other advertising,

6   Plaintiff purchased the Products in reliance on Defendant's representations that the Products

7   would improve his balance, strength, flexibility, endurance, and stamina.  Plaintiff would not have

8   purchased the Products at all, or would not have paid such a high price for the Products, but for

9   Defendant's false promotion of the Products' illusory benefits.  Plaintiff has thus suffered injury in

10  fact and lost money or property as a direct result of Defendant's misrepresentations and material

11  omissions.

12         40.     By committing the acts alleged above, Defendant has engaged in fraudulent

13  business acts and practices, which constitute unfair competition within the meaning of Business &

14  Professions Code § 17200.

15         41.     An action for injunctive relief and restitution is specifically authorized under

16  Business & Professions Code § 17203.

17         Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

18                              **THIRD CAUSE OF ACTION**

19              **(Plaintiff, On Behalf of Himself, the Class, and the General Public,**
     **Alleges Violations of California Business & Professions Code § 17200, *et seq.***
20                **Based on Commission of Unlawful Acts)**

21         42.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 40 of

22  this Complaint.

23         43.     The violation of any law constitutes an unlawful business practice under Business

24  & Professions Code § 17200.

25         44.     As detailed more fully in the preceding paragraphs, the acts and practices alleged

26  herein were intended to or did result in the sale of the Products in violation of the CLRA, Cal. Civ.

27  Code § 1750, *et seq.*, and specifically California Civil Code Section 1770(a)(5), Section

28  1770(a)(7), and Section 1770(a)(9).

45. Defendant's conduct also violates Section 5 of the Federal Trade Commission ("FTC") Act, 15 U.S.C. § 45, which prohibits unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce. By misrepresenting that the Products improve balance, strength, flexibility, endurance, and stamina, Defendant is violating Section 5 of the FTC Act.

46. The FTC has also determined that the FTC Act requires companies to "have a reasonable basis for advertising claims before they are disseminated." *See* FTC Policy Statement Regarding Advertising Substantiation, Appended to *Thompson v. Medical Co.*, 104 F.T.C. 648, 839 (1984), *aff'd*, 791 F.2d 189 (D.C. Cir. 1986), *cert. denied*, 479 U.S. 1086 (1987). The FTC has further determined that "a firm's failure to possess and rely upon a reasonable basis for objective claims constitutes an unfair and deceptive act or practice in violation of Section 5 of the Federal Trade Commission Act," and that "as a matter of law, firms lacking a reasonable basis before an ad is disseminated violate Section 5 of the FTC Act and are subject to prosecution." *Ibid.* Companies are also required to have substantiation for any claims made in celebrity and consumer endorsements. *See* 16 C.F.R. §§ 255.1(a) and 255.22(a). By advertising directly and through celebrity and consumer endorsements that the Products improve balance, strength, flexibility, endurance, and stamina without any reasonable basis for making these claims, Defendant is violating Section 5 of the FTC Act.

47. Defendant's conduct also violates California Business & Professions Code § 17508, which makes it unlawful for any person doing business in California and advertising to consumers in California to make any false or misleading advertising claims, including claims that "purport to be based on factual, objective or clinical evidence" or "purport to be based on any fact." By misrepresenting that the Products improve balance, strength, flexibility, endurance, and stamina, and by making those claims without any factual basis for doing so, Defendant is violating Business & Professions Code § 17508.

48. By violating the CLRA, the FTC Act, and Business & Professions Code § 17508, Defendant has engaged in unlawful business acts and practices which constitute unfair competition within the meaning of Business & Professions Code § 17200.

49.     An action for injunctive relief and restitution is specifically authorized under Business & Professions Code § 17203.

50.     Plaintiff purchased the Products in reliance on Defendant's representations that the Products would improve his balance, strength, flexibility, endurance, and stamina. Plaintiff would not have purchased the Products at all, or would not have paid such a high price for the Products, but for Defendant's false promotion of the Products' illusory benefits. Plaintiff has thus suffered injury in fact and lost money or property as a direct result of Defendant's misrepresentations and material omissions.

Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

## FOURTH CAUSE OF ACTION

**(Plaintiff, On Behalf of Himself, the Class, and the General Public,
Alleges Violations of California Business & Professions Code § 17200, *et seq.*
Based on Unfair Acts and Practices)**

51.     Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 49 of this Complaint.

52.     Under Business & Professions Code § 17200, any business act or practice that is unethical, oppressive, unscrupulous and/or substantially injurious to consumers, or that violates a legislatively declared policy, constitutes an unfair business act or practice.

53.     Defendant has engaged, and continues to engage, in conduct which is immoral, unethical, oppressive, unscrupulous and/or substantially injurious to consumers. This conduct includes, but is not limited to, misrepresenting that the Products would improve users' balance, strength, flexibility, endurance, and stamina, and making these claims without any reasonable basis for doing so. The gravity of harm caused by Defendant's conduct as described herein far outweighs the utility, if any, of such conduct.

54.     Defendant has engaged, and continues to engage, in conduct that violates the legislatively declared policy of the CLRA against misrepresenting the characteristics, uses, benefits, and quality of goods for sale, the legislatively declared policy of the FTC Act against committing unfair methods of competition and unfair or deceptive acts or practices in or affecting commerce, and the legislatively declared policy of Business & Professions Code § 17508 against

1   making false or misleading advertising claims. Defendant gains an unfair advantage over its

2   competitors, whose advertising for Products must comply with the CLRA, the FTC Act, and

3   Business & Professions Code § 17508.

4          55.    Defendant's conduct, including misrepresenting the benefits of the Products, is

5   substantially injurious to consumers. Such conduct has and continues to cause substantial injury

6   to consumers because consumers would not have purchased the Products at all, or would not have

7   paid such a high price for the Products, but for Defendant's false promotion of the Products'

8   illusory benefits. Consumers have thus overpaid for the Products. Such injury is not outweighed

9   by any countervailing benefits to consumers or competition. Indeed, no benefit to consumers or

10  competition results from Defendant's conduct. Since consumers reasonably rely on Defendant's

11  representations of the Products and injury results from ordinary use of the Products, consumers

12  could not have reasonably avoided such injury. *Davis v. Ford Motor Credit Co.*, 179 Cal. App.

13  4th 581, 597-98 (Cal. Ct. App. 2009); *see also Drum v. San Fernando Valley Bar Ass'n*, 182 Cal.

14  App. 4th 247, 257 (Cal. Ct. App. 2010) (outlining the third test based on the definition of "unfair"

15  in Section 5 of the FTC Act).

16         56.    By committing the acts alleged above, Defendant has engaged in unfair business

17  acts and practices which constitute unfair competition within the meaning of Business &

18  Professions Code § 17200.

19         57.    An action for injunctive relief and restitution is specifically authorized under

20  Business & Professions Code § 17203.

21         58.    Plaintiff purchased the Products in reliance on Defendant's representations that the

22  Products would improve his balance, strength, flexibility, endurance, and stamina. Plaintiff would

23  not have purchased the Products at all, or would not have paid such a high price for the Products,

24  but for Defendant's false promotion of the Products' illusory benefits. Plaintiff has thus suffered

25  injury in fact and lost money or property as a direct result of Defendant's misrepresentations and

26  material omissions.

27         Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

28

1

### FIFTH CAUSE OF ACTION

2

**(Plaintiff, On Behalf of Himself, the Class, Alleges Violations of
California Civil Code § 2313 Based on Breach of Express Warranty)**

3

4          59.       Plaintiff realleges and incorporates herein by reference Paragraphs 1 through 57 of

5     this Complaint.

6          60.       Defendant's representations that the Products will improve users' balance, strength

7     and flexibility constitute affirmations of fact made with regard to the Products as well as

8     descriptions of the Products.

9          61.       Defendant's representations regarding the Products are made in the Product

10    brochures, Product packaging, Product advertising and Product promotions and are thus part of the

11    basis of the bargain between Defendant and purchasers of the Products.

12         62.       As set forth in the paragraphs above, Defendant's statements concerning the

13    Products are both objectively and concededly false.

14         63.       Defendant has thus breached its express warranties concerning the Products in

15    violation of California Civil Code § 2313.

16         64.       Plaintiff and other members of the Class have suffered damages as a result of

17    Defendant's breach in that they paid for a Product with qualities and benefits that they did not

18    receive.

19                   Wherefore, Plaintiff prays for judgment against Defendant, as set forth hereafter.

20                                          **PRAYER FOR RELIEF**

21                   WHEREFORE, Plaintiff prays for judgment and relief against Defendant as

22    follows:

23                   A.       That the Court declare this a class action;

24                   B.       That the Court preliminarily and permanently enjoin Defendant from

25    conducting its business through the unlawful, unfair or fraudulent business acts or practices,

26    untrue and misleading advertising and other violations of law described in this Complaint;

27

28

1          C.     That the Court order Defendant to conduct a corrective advertising and

2 information campaign advising consumers that the Products do not have the characteristics, uses,

3 benefits, and quality Defendant has claimed;

4          D.     That the Court order Defendant to implement whatever measures are

5 necessary to remedy the unlawful, unfair or fraudulent business acts or practices, untrue and

6 misleading advertising, and other violations of law described in this Complaint;

7          E.     That the Court order Defendant to notify each and every individual and/or

8 business who purchased the Products of the pendency of the claims in this action in order to give

9 such individuals and businesses an opportunity to obtain restitution from Defendant;

10         F.     That the Court order Defendant to pay restitution to restore to all affected

11 persons all funds acquired by means of any act or practice declared by this Court to be an

12 unlawful, unfair, or a fraudulent business act or practice, untrue or misleading advertising, or a

13 violation of the CLRA, plus pre- and post-judgment interest thereon;

14         G.     That the Court order Defendant to disgorge all monies wrongfully obtained

15 and all revenues and profits derived by Defendant as a result of their acts or practices as alleged in

16 this Complaint;

17         H.     That the Court award damages to Plaintiff and the Class to compensate

18 them for Defendant's breach of the express warranties created with regard to the Products;

19         I.     That the Court grant Plaintiff his reasonable attorneys' fees and costs of suit

20 pursuant to Code of Civil Procedure § 1021.5, Civil Code § 1780(d), the common fund doctrine

21 and/or any other appropriate legal theory; and

22         J.     That the Court grant such other and further relief as may be just and proper.

23

24

25

26

27

28

1

## JURY DEMAND

2   Plaintiff demands a trial by jury on all causes of action so triable.

3

DATED:  February 1, 2011

4                                                                   LEXINGTON LAW GROUP

5

6

7   Mark N. Todzo (State Bar No. 168389)
    Howard J. Hirsch (State Bar No. 213209)
8   LEXINGTON LAW GROUP
    1627 Irving Street
9   San Francisco, CA 94122
    Telephone: (415) 759-4111
10  Facsimile: (415) 759-4112
    mtodzo@lexlawgroup.com
11

12  Christopher M. Burke (State Bar No. 214799)
    SCOTT + SCOTT LLP
13  600 B Street, Suite 1500
    San Diego, CA 92101
14  Telephone: (619) 233-4565
    Facsimile: (619) 233-0508
15  cburke@scott-scott.com

16
    Attorneys for Plaintiff C.F.C., a minor, by and
17  through Christine F., his parent and guardian

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT – C.F.C. v. POWER BALANCE LLC